**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq.
609 W. South Orange Avenue, Suite 2P
South Orange, NJ  07079
Telephone: (973)  313-1887
Facsimile: (973) 833-0399
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TERENCE ROBY,  BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>v.<br><br>OCEAN POWER TECHNOLOGIES, INC., AND CHARLES DUNLEAVY<br><br>Defendants. | Case No.<br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Terence Roby individually and on behalf of all other persons similarly situated, by plaintiff's undersigned attorneys, for plaintiffs' complaint, allege upon the investigation made by and through their counsel, which included public filings made by Ocean Power Technologies, Inc. ("OPTT" or the "Company") with the Securities and Exchange Commission (the "SEC"), as well as press releases, news articles, analyst reports, court filings, and media reports

1

concerning the Company. This complaint is based upon plaintiff's personal knowledge as to plaintiff's own acts, and upon information and belief as to all other matters, except where indicated otherwise.

## NATURE OF ACTION

1.  This is a securities class action that Plaintiffs bring on behalf of a class of investors who bought OPTT common stock during the period beginning on January 14, 2014 through June 9, 2014 (the "Class Period" and the "Open Market Class") bringing claims under the Securities and Exchange Act of 1934 (the "Exchange Act"); and

## JURISDICTION AND VENUE

2.  The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b), 78b-1 and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. §240.10b-5, as well as

3.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.  Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b). Defendants maintain their principal executive offices in this District and many of the acts, practices and transactions complained of herein occurred in substantial part in this District.

5.  In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate

commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6. Plaintiff Terence Roby purchased OPTT common stock during the Class Period and was damaged thereby. His PSLRA certification is attached hereto.

7. Defendant OPTT is a Delaware corporation with its principal place of business in Pennington, New Jersey. OPTT develops and is seeking to commercialize systems that generate electricity through ocean waves. The Company is listed on NASDAQ currently trades under ticker "OPTT".

8. Defendant Charles Dunleavy was appointed OPTT's Chief Executive Officer on January 15, 2010. Dunleavy was appointed an OPTT director on 1990. Dunleavy was terminated for cause from these positions and all other positions he held at OPTT on June 10, 2014. Between 1993 and 2001, Dunleavy was OPTT's vice president, finance, and between June 1, 2010, its Chief Financial Officer.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

9. Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of all those who purchased or otherwise acquired the common stock of OPTT during the Class Period and who suffered damages (the "Open Market Class"), or who acquired the common stock of OPTT in the Offering (the "Offering Class", and with the Open Market Class, the "Classes"). Excluded from the Classes are defendants, the officers and directors of the Company, members of their immediate families and their

3

legal representatives, heirs, successors, or assigns and any entity in which defendants have or had a controlling interest.

10. The members of the Classes are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to plaintiffs at this time and can only be ascertained through appropriate discovery, plaintiffs believe that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Classes may be identified from records maintained by OPTT or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

11. Plaintiffs' claims are typical of the claims of the members of the Classes as they acquired OPTT's common stock without knowledge of Defendants' false and misleading statements, and they and all members of the Classes are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

12. Plaintiffs will fairly and adequately protect the interests of the members of the Classes and have retained counsel competent and experienced in class and securities litigation.

13. Common questions of law and fact exist as to all members of the Classes and predominate over any questions solely affecting individual members of the Classes. Among the questions of law and fact common to the Classes are:

    a. whether the federal securities laws were violated by defendants' acts as alleged herein;

b. whether defendants misrepresented material facts and omitted to state material facts necessary to prevent the statements made to the investing public from being misleading during the Class Period or in the Registration Statements concerning its financial statements;

c. whether defendants acted knowingly or recklessly in making materially misleading representations or omitting to state material facts during the Class Period;

d. whether the market prices of the Company's common stock was artificially inflated or distorted during the Class Period because of defendants' conduct complained of herein; and

e. whether the members of the Classes have sustained damages and the proper measure of such damages.

14. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## **DEFENDANTS' MISCONDUCT**

15. OPTT develops systems that generate power using ocean waves. It has not yet succeeded in commercializing its systems, and instead largely relies on government agency product development grants for support.

16. One of OPTT's principal projects, which it conducts through its 88.2% owned subsidiary Victorian Wave Partners Pty. Ltd ("VWP"), is to develop an ocean wave-based power station off the coast of Portland, Victoria, Australia (the "Australian Project"), population 9,600.

17. In November 2009, OPTT announced that it had won an AUD 66.5 million award from the Australian Federal Government to go towards the Australian Project (the "Grant"). The Grant came with multiple conditions, including that OPTT secure other funding.

18. On January 14, 2014, OPTT announced that it had entered into a Deed of Variation with the Australian Renewable Energy Agency ("ARENA") modifying the Grant:

> **Ocean Power Technologies Announces Funding Agreement With Australian Government for A$66.5 Million Grant**
>
> PENNINGTON, N.J., Jan. 14, 2014 (GLOBE NEWSWIRE) -- Ocean Power Technologies, Inc. (Nasdaq:OPTT) ("OPT" or "the Company"), today announced that Victorian Wave Partners Pty Ltd ("VWP"), its project-specific operating entity wholly-owned by Ocean Power Technologies, Australasia (OPTA), has signed an agreement with the Australian Renewable Energy Agency("ARENA"). This agreement is a Deed of Variation to the original Funding Deed through which a A$66.5 million grant was previously awarded by the Commonwealth. The grant will be used towards the cost of building and deploying a 62.5MW peak-rated wave power station off the coast of Portland, Victoria.
> Among the important changes included in the new agreement are the incorporation of milestones for each of the three stages of the project, acceleration of reimbursement of eligible expenses for stages one and two, and an increase in the number of milestones to better support project cash flow requirements. This agreement also recognizes the role of Lockheed Martin as the lead for systems integration of the PowerBuoys and overall program management.

Charles F. Dunleavy, Chief Executive Officer of OPT, said, "We are very grateful for the support of the Australian Government and ARENA during this process to make positive changes to the original Funding Deed. This new agreement significantly improves our ability to attract investors during the early stages of the project. We are also pleased to offer the prospect of manufacturing, engineering and maritime jobs in Victoria based on OPT's unique and game-changing technology, at a time when more traditional manufacturing jobs are experiencing enhanced competitive pressures. We have been impressed with the commercial and results-oriented way in which ARENA has worked with us after assuming responsibility for a wide range of projects and programs last year."

Ivor Frischknecht, Chief Executive Officer of ARENA, added, "We are pleased to support development of the VWP demonstration project. It aligns with our vision of a society increasingly powered by competitive renewable energy as well as our commitment to sharing knowledge and information about our projects with the industry."

VWP was awarded the grant by the Commonwealth of Australia through a competitive process undertaken as part of the Renewable Energy Demonstration Program, which is administered by ARENA. The funding deed for the project sets out the terms of the grant including the requirement to obtain significant additional funding.

The planned Portland wave power station has a total project value of AU $232 million, and at completion would be the largest of its kind in the world. With twenty-eight PowerBuoys connected to the grid by an underwater substation and a submarine cable the plant would be capable of providing power for up to 10,000 homes. The project is being developed by VWP, a wholly owned subsidiary of Ocean Power Technologies Australasia Pty Ltd ("OPTA"), an Australian company owned by OPT (88%) and Woodside Energy Ltd (12%), Australia's largest independent oil and gas company. Since the original announcement of the grant, VWP has completed engineering milestones and conducted surveys and studies to meet the requirements for licenses and approvals. In addition, the Company is currently assessing power purchase agreements with local industry and utilities.

Mr. Dan Tehan, Federal Member for Wannon in Victoria, stated that "Wave energy has enormous potential and it is fantastic that Portland has been chosen as the site for this renewable energy project."

19. On April 1, 2014, OPTT announced that it had received some funds

from the Grant (the "April 1 Press Release"):
> **OCEAN POWER TECHNOLOGIES ANNOUNCES VICTORIAN WAVE PARTNERS HAS RECEIVED A$5 MILLION INITIAL GRANT FUNDING FROM AUSTRALIAN RENEWABLE ENERGY AGENCY**
>
> []
> PENNINGTON, N.J., April 1, 2014 (GLOBE NEWSWIRE) -- Ocean Power Technologies, Inc. (Nasdaq:OPTT) ("OPT" or "the Company"), today announced that Victorian Wave Partners Pty. Ltd. ("VWP"), has received approximately A$5.0 million in initial grant funding from the Australian Renewable Energy Agency ("ARENA"). VWP is a project-specific entity wholly-owned by Ocean Power Technologies (Australasia) Pty. Ltd. (OPTA), which is 88% owned by OPT.
> The funding received represents the first payment under the A$66.5 million grant that was awarded by ARENA to VWP toward the cost of building and deploying its planned wave power station project off the coast of Australia. VWP and ARENA signed a Deed of Variation in January, which amended the grant agreement to accelerate the reimbursement of eligible expenses for stages one and two of the planned three-stage project and increases the number of project milestones.
> The grant requires the raising of significant additional funding by VWP as well as the completion of specific milestones. VWP will be deferring revenue recognition of this payment pending satisfaction of certain grant requirements.
> Charles F. Dunleavy, Chief Executive Officer of OPT, said, "We appreciate the continued support of ARENA for the VWP project. Working on the development of this project with our partner, Lockheed Martin, we believe that our unique and game-changing technology will provide the impetus for job growth in Australia. Our strategy is to utilize a broad range of manufacturing and service providers under this project and to move our technology to full commercial standing. We expect this to include both our grid-connected utility system as well as our Autonomous PowerBuoy for applications in border security, maritime surveillance, and offshore oil & gas operations."
> VWP is currently conducting seabed surveys toward meeting the requirements for licenses and approvals. In addition, VWP is also assessing power purchase agreement opportunities.

20. OPTT filed the April 1 Press Release with the SEC by attaching it to a current report filed that day on Form 8-K (the "April 1 Form 8-K").

21. On April 4, 2014, OPTT filed with the SEC the Prospectus Supplement, which called for the sale of 3,800,000 shares, with proposed per-share offering price of USD $3.10. The Prospectus Supplement was incorporated by reference into the Registration Statement, and incorporated by reference the April 1 Form 8-K.

22. The Offering closed on April 9, 2014, with Ocean Power receiving net proceeds of $10.8 million. OPTT also offered the underwriters a 30-day option to purchase up to an additional 570,000 shares.

23. On June 10, 2014, OPTT shocked the market by announcing that it had fired its CEO, Defendant Dunleavy, for cause, and was investigating its statements concerning the Australian Project:

> **Ocean Power Technologies Announces Changes in Company Leadership**
>
> PENNINGTON, N.J., June 10, 2014 (GLOBE NEWSWIRE) -- Ocean Power Technologies, Inc. (OPTT) ("OPT" or "the Company"), today announced that it has terminated Charles F. Dunleavy as Chief Executive Officer and as an employee of the Company, effective June 9, 2014. Mr. Dunleavy has also been removed from his position as Chairman of the Board of Directors.
> David L. Keller, who has served as a Non-Executive Director of the Company since October 2013, has assumed the position of Interim Chief Executive Officer, effective yesterday, and will continue in this position while the Company searches for a permanent replacement.
> Mr. Keller previously served as an independent director of ThermoEnergy, Inc. from April 2013 to May 2014 and as President, Chief Executive Officer, and Director of Global Power Equipment Group Inc. from September 2009 until June 2012. Earlier in his career, Mr.

>Keller served as President and Chief Operating Officer of Babcock & Wilcox Company, a wholly owned subsidiary of McDermott International, Inc., from March 2001 until his retirement in June 2007. Today the Company also announced that the Board of Directors has appointed a Special Committee, composed of outside directors and the Interim Chief Executive Officer, to conduct an internal investigation into the agreement between Victorian Wave Partners Pty Ltd, a project-specific operating entity wholly-owned by the Company's subsidiary Ocean Power Technologies (Australia) Pty Ltd, and the Australian Renewable Energy Agency, and related public statements concerning that project. The Special Committee will retain outside counsel to assist in this investigation.

24. That day, OPTT's per share stock price closed at $1.63, a $0.84 (34%) fall from the previous close, damaging investors.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## FRAUD-ON-THE-MARKET DOCTRINE

25. Plaintiffs will rely upon the presumption of reliance established by the fraud on the market doctrine in that, among other things:

   a. Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

   b. The omissions and misrepresentations were material;

   c. The Company's stock traded in an efficient market;

   d. The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's stock; and

   e. Plaintiffs and other members of the Open Market Class purchased OPTT common stock between the time defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted

facts.

26. At all relevant times, the market for OPTT common stock was efficient for the following reasons, among others:

    a. As a regulated issuer, OPTT filed periodic public reports with the SEC;

    b. OPTT's stock was listed on the NASDAQ, creating a presumption that its stock trades on an efficient market;

    c. OPTT regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services;

    d. Several million shares of OPTT shares were traded on a weekly basis, demonstrating a strong presumption of an efficient market;

    e. OPTT was eligible to file a short-form registration statements with the SEC on Form S-3;

    f. OPTT was followed by numerous analysts that issued reports about it;

    g. New company specific information was rapidly reflected in OPTT's stock price.

    h. Many market makers made markets in OPTT's stock.

## **NO SAFE HARBOR**

27. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. The specific misrepresentations of defendants pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of OPTT who knew that those statements were false when made.

## FIRST CLAIM

## Violation Of Section 10(b) Of The Exchange Act
## And Rule 10b-5 Promulgated Thereunder
## Against All Defendants

28. Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

29. This claim is brought on behalf of all persons who bought OPTT stock at artificially inflated prices, and suffered damages as a result, against Defendants OPTT and Dunleavy.

30. Throughout the Class Period, Defendants, individually and in concert, directly or indirectly, engaged in a common plan, scheme and course of conduct described herein, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and a course of business which operated as a fraud upon plaintiff and the other members of the Class; made various false statements of material facts and omitted to state material facts to make the statements made not misleading to plaintiff and the other members of the Class; and employed manipulative or deceptive devices and contrivances in connection with the purchase and sale of OPTT common stock.

31. The purpose and effect of defendants' plan, scheme and course of conduct was to artificially inflate and maintain the price of OPTT's common stock.

32. Defendants, who are the top officers of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive plaintiffs and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other OPTT personnel to members of the investing public, including Plaintiff and the Class, and the securities analysts.

33. As a result of the foregoing, the market price of OPTT's securities was artificially inflated during the Class Period. In ignorance of the falsity of the defendants' statements plaintiff and the other members of the Class relied, to their damage, on the statements described above and/or the integrity of the market price of OPTT securities during the Class Period in purchasing OPTT common stock at

prices which were artificially inflated as a result of defendants' false and misleading statements.

34.   Had plaintiffs and the other members of the Class known of the material adverse information which defendants did not disclose, they would not have purchased OPTT common stock at the artificially inflated prices that they did.

35.   By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

36.   As a direct and proximate result of defendants' wrongful conduct, plaintiffs and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

37.   This action is being brought within two years after the discovery of the untrue statements and omissions and within five years after their issuance.

38.   As a senior officer and director of a publicly-held company whose securities were, and are, registered with the SEC pursuant to the Exchange Act, traded on the NASDAQ, and governed by the provisions of the federal securities laws, OPTT had a duty to promptly disseminate accurate and truthful information about the undisclosed and material business conditions of OPTT, so that the market price of OPTT's publicly-traded securities would be based upon truthful and accurate information. Dunleavy's misrepresentations and omissions during the Class Period violated these specific requirements and obligations. By virtue of his position of control and authority at OPTT, Dunleavy had the power to and did control the content of the various public statements concerning OPTT, its business

conditions and financial results during the Class Period and indeed made many of the challenged statements described herein. Accordingly, Dunleavy was responsible for the accuracy of the public statements and releases detailed herein and is primarily liable for the misrepresentations contained therein.

## SECOND CLAIM
## Violation Of Section 20(a) Of The Exchange Act
## Against Dunleavy

39. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

40. This second claim under §20(a) of the Exchange Act is alleged against the Dunleavy, only, based on his primary violation of §10b and Rule 10b-5 by OPTT.

41. By reason of his positions as chief executive officers and director of OPTT, Dunleavy was at all relevant times a controlling person within the meaning of Section 20 of the Exchange Act. Because of his executive and directorial positions with OPTT, Dunleavy had access to the adverse and undisclosed information about OPTT's business conditions and financial results. Further, as particularized herein, Dunleavy was able to and did control the contents of various reports and public statements regarding OPTT. Any acts attributed to OPTT were caused and/or influenced by Dunleavy by virtue of his controlling-person position at OPTT.

42. In particular, Dunleavy had direct and supervisory involvement in the

day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

43. As set forth above, Defendants violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of his position as a controlling person of OPTT, Dunleavy is liable pursuant to Section 20(a) of the Exchange Act.

44. As a direct and proximate result of Dunleavy's wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

45. This action is being brought within two years after the discovery of the untrue statements and omissions and within five years after their issuance.

**WHEREFORE**, plaintiffs pray for relief and judgment, as follows:

(A) Determining that this action is a proper class action, certifying plaintiffs as class representatives under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

(B) Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(C) Awarding plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(D) Such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury.

Dated: June 13, 2014                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/ Laurence M. Rosen, Esq.
Laurence M. Rosen
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Telephone: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

*Counsel for Plaintiffs*

# Certification and Authorization of Named Plaintiff Pursuant to Federal Securities Laws

The individual or institution listed below (the "Plaintiff") authorizes and, upon execution of the accompanying retainer agreement by The Rosen Law Firm P.A., retains The Rosen Law Firm P.A. to file an action under the federal securities laws to recover damages and to seek other relief against Ocean Power Technologies, Inc.. The Rosen Law Firm P.A. will prosecute the action on a contingent fee basis and will advance all costs and expenses. The Ocean Power Technologies, Inc.. Retention Agreement provided to the Plaintiff is incorporated by reference, upon execution by The Rosen Law Firm P.A.

**First name:** Terence
**Middle initial:**
**Last name:** Roby
**Address:** Redacted
**City:**
**State:**
**Zip:**
**Country:**
**Facsimile:**
**Phone:**
**Email:**

Plaintiff certifies that:

1. Plaintiff has reviewed the complaint and authorized its filing.
2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.
3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.
4. Plaintiff represents and warrants that he/she/it is fully authorized to enter into and execute this certification.
5. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.
6. Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

Acquisitions:

| Type of Security | Buy Date | # of Shares | Price per Share |
| --- | --- | --- | --- |
| Common Stock | March 19, 2014 | 338 | 4.13 |

Sales:

| Type of Security | Sale Date | # of Shares | Price per Share |
| --- | --- | --- | --- |
| Common Stock | May 5, 2014 | 338 | 2.66 |

**Certification for Terence Roby (cont.)**

7. I have not served as a representative party on behalf of a class under the federal security laws during the last three years, except if detailed below. [ ]

I declare under penalty of perjury, under the laws of the
United States, that the information entered is accurate: **YES**

By clicking on the button below, I intend to sign and execute
this agreement and retain the Rosen Law Firm, P.A. to
proceed on Plaintiff's behalf, on a contingent fee basis. **YES**

Signed pursuant to California Civil Code Section 1633.1, et seq. - and the Uniform Electronic Transactions Act as adopted by the various states and territories of the United States.

Date of signing: 06/13/2014